## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **API AMERICAS INC., et al.,** | § | **Case No. 20-10239 (___)** |
| | § | |
| **Debtors.[1]** | § | **(Joint Administration Requested)** |
| _____ | § | |

**MOTION OF THE DEBTORS FOR INTERIM AND FINAL AGREED ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Debtors API Americas Inc. ("API Americas") and API (USA) Holdings Limited ("API Holdings," and collectively with API Americas, "Debtors") file this motion ("Motion"), and in support thereof, respectfully state as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware ("Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: API (USA) Holdings Limited (3934) and API Americas Inc. (9126). The location of the Debtors' service address is: 3841 Greenway Circle, Lawrence, Kansas 66046.

4.      The statutory bases for the relief requested in this Motion are sections 105, 361, 362, 363, 506(c), 507(b), and 552(b) of title 11 of the United States Code ("Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Rules 2002-1, 4001-2 and 9013-1(m).

## Background

5.      On February 2, 2020 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On the Petition Date, the Debtors moved for joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or examiner in these chapter 11 cases and no official committees have been appointed or designated.

6.      A description of the Debtors' businesses and operations and the events leading to the commencement of the chapter 11 cases is set forth in the *Declaration of Mitchell Gendel in Support of Chapter 11 Filings and First Day Pleadings* [D.I. 2] ("First Day Declaration").

## The Debtors' Prepetition Secured Indebtedness

**A.      Prepetition Credit Facility Agreement**

7.      SPH Group Holdings LLC, Steel Excel Inc., API Americas, Handy & Harman Group Ltd, and iGo, Inc. (collectively, "U.S. Borrowers"), Cedar 2015 Limited, as U.K. borrower ("U.K. Borrower" and collectively with U.S. Borrowers, "Borrowers"), the other Loan Parties as defined in the Credit Agreement (as defined below) party thereto ("Loan Parties"), each of the lenders from time to time party thereto ("Lenders"), and PNC Bank, National Association ("PNC"), as administrative agent (in such capacity, "Administrative Agent," and together with the Lenders, "Prepetition Secured Parties"), are parties to that certain Credit

2

Agreement dated as of November 14, 2017, (as amended, modified, restated, amended and restated, and/or supplemented from time to time, "Credit Agreement" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including the "Loan Documents" as such term is defined in the Credit Agreement, "Prepetition Loan Documents"), which provided the Borrowers with a $700 million credit facility ("Credit Facility").  The Credit Facility consists of: (a) a $500 million revolving credit facility ("RC Facility," and such loans thereunder, "Revolving Loans"), which includes a $50 million subfacility for the issuance of swing loans ("Swing Loans") and a $50 million subfacility for the issuance of letters of credit ("Letters of Credit"), and (b) a $200 million term loan facility ("Term Loan Facility," and such loans thereunder, "Term Loan").  All indebtedness, liabilities, and obligations under the Prepetition Loan Documents, specifically including all "Obligations" as defined in the Credit Agreement which includes the API Americas Direct Obligation (as defined below), are referred to herein as "Prepetition Secured Obligations."  Each of the Prepetition Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the Loan Parties, including the Debtors, party to any Prepetition Loan Documents.

8. The Credit Facility is structured to allow each of the Borrowers to borrow directly or through the Borrowing Agent (as defined in the Credit Agreement) Revolving Loans and the U.S. Borrowers are also obligated with respect to the Term Loan.  API Americas is the only Borrower which is also a Debtor and API Holdings is the only Guarantor (as defined in the Credit Agreement) which is also a Debtor and thus are the subjects of these chapter 11 cases.

9.      As of the close of business on January 29, 2020, the Debtors were justly and lawfully indebted and liable under the Prepetition Loan Documents, without defense, counterclaim, reduction or offset of any kind, in the aggregate principal amount of not less than (A) $44,388,238.42 in respect of loans and other financial accommodations made by the Lenders comprised of the principal amount of loans outstanding under RC Facility advanced directly to API Americas ("API Americas Direct Obligation"), plus (B) as a co-obligor and Loan Party with respect to an aggregate amount of $232,202,382.00 with respect to Revolving Loans and the face amount of issued and outstanding Letters of Credit and Swing Loans advanced to, or issued for the benefit of, Borrowers other than API Americas and $190,000,000.00 with respect to the Term Loan, pursuant to, and in accordance with, the Credit Agreement and other Prepetition Loan Documents, plus accrued and unpaid interests, fees, costs and expenses (including counsel, financial advisors, consultants, accountants, to the extent applicable, chargeable or reimbursable under the Prepetition Loan Documents) with respect to each of the foregoing.

**B.      Prepetition Liens and Collateral**

10.      Pursuant to and as more particularly described in the Prepetition Loan Documents, the Prepetition Secured Obligations are secured by, among other things, first priority liens on, security interests in, and assignments and pledges of (collectively, "Prepetition Liens"), all of the Debtors' right, title, and interest in the Debtors' personal property (to the extent provided in and as more fully described in the Prepetition Loan Documents, "Prepetition Collateral"), subject to any other valid, perfected and unavoidable lien or security interest otherwise existing as of the Petition Date that is senior to the security interest of the Prepetition Secured Parties, to the extent such liens or security interests are valid, perfected and unavoidable liens or security interests existing as of the Petition Date and otherwise senior to the Prepetition

Liens as of the Petition Date (collectively, "Prepetition Permitted Liens" and each a "Prepetition Permitted Lien").

### Relief Requested

11.    The Debtors request entry of an interim agreed order ("Interim Order"), substantially in the form attached hereto as Exhibit A: (a) authorizing the Debtors' use of Cash Collateral[2], and any proceeds thereof, on the terms and conditions set forth in the Interim Order and subject to the Budget (as defined herein); (b) providing Adequate Protection (as defined below) to Administrative Agent, for itself and for the Lenders, pursuant to section 361, 362, and 363(e) of the Bankruptcy Code, for any Diminution in Value (as defined below) of their interests in the Prepetition Collateral resulting from the Debtors' use of Cash Collateral and imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the Interim Order, subject to notice and a hearing as provided therein; (d) subject to entry of a final order ("Final Order"), waiver of the Debtors' ability to surcharge against the Prepetition Collateral or the Adequate Protection Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law and waiver of the applicability of the "equities of the case" exception under 552(b) of the Bankruptcy Code; (e) scheduling a final hearing ("Final Hearing") to consider entry of the Final Order; and (f) granting related relief.

---

[2]    As defined in the Interim Order, the term "Cash Collateral" shall be deemed to include, without limitation, all of each Debtor's "Cash Collateral" as defined under section 363 of the Bankruptcy Code, all deposits subject to setoff and cash arising from the collection or other conversion to cash of any and all property (whether real or personal) in which the Prepetition Secured Parties have valid, perfected security interests, liens or mortgages, regardless of whether such security interests, liens, or mortgages existed as of the Petition Date or arise thereafter or pursuant to this Interim Order.

12.     The Debtors require immediate access to liquidity to ensure that they are able to continue operating their businesses during these chapter 11 cases, preserve the value of their estates for the benefit of all parties in interest, and administer a value-maximizing chapter 11 process.  However, all or substantially all of the Debtors' cash is Cash Collateral, and, without prompt access to such Cash Collateral, the Debtors would be unable to satisfy employee compensation obligations, satisfy trade payables incurred in the ordinary course of business, preserve and maximize the value of their estates, and fund the administration of these chapter 11 cases, which would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.

13.     During these chapter 11 cases, the Debtors will generate cash from their operations and will need to use such cash to satisfy payroll obligations, continue satisfying obligations under their customer contracts, maintain insurance coverage, pay taxes, and make any other payments essential to the continued management, operation, and preservation of the Debtors' businesses.  The ability to satisfy these expenses as and when due is essential to the Debtors' continued operation of their businesses during the pendency of the chapter 11 cases. Other than the Cash Collateral and loans or advances to the Debtors from the Loan Parties (other than API Americas, API Holdings, Cedar 2015 Limited, API Limited (as defined in the Credit Agreement) and the UK Guarantors (as defined in the Credit Agreement)) to the Debtors for the purpose of administering these chapter 11 cases ("Wind-Up Loan"), which the Debtors anticipate will serve as the basis for debtor-in-possession financing that the Debtors plan to pursue, the Debtors do not have access to funds sufficient to continue operation of their businesses.

14.     For the foregoing reasons, the Debtors' continued use of Cash Collateral is necessary to preserve the value of their estates and maximize their value for the benefit of all

stakeholders.  Under the proposed Interim Order and Final Order, the Debtors' use of Cash Collateral is subject to certain limitations, including that the Debtors may only use Cash Collateral in accordance with the agreed upon budget attached as Exhibit 1 to the Interim Order, as may be modified from time to time with the consent of the Administrative Agent, in its discretion ("Budget").

15.    In addition, the Debtors and the Prepetition Secured Parties negotiated the proposed general terms of the Debtors' use of Cash Collateral in good faith and at arm's length, and such general terms (including the Administrative Agent's consent for Debtors' use of Cash Collateral) are set forth in the Fifth Amendment to Credit Agreement attached hereto as Exhibit B ("Fifth Amendment").  The Debtors believe that the terms on which the Prepetition Secured Parties ultimately agreed to permit the Debtors to use Cash Collateral are the most favorable terms the Debtors reasonably could have achieved under the circumstances.  Considering the overarching benefits of a negotiated and consensual cash collateral order, the Debtors submit that they should be authorized to use Cash Collateral on the terms described herein.  *See* 11 U.S.C. § 363(c)(2) (court may authorize use of cash collateral if "each entity that has an interest in such cash collateral consents").

### **Bankruptcy Rule 4001 and Local Rule 4001-2 Concise Statement**[3]

16.    Pursuant to Bankruptcy Rules 4001(b)(1) and (d) and Local Rule 4001-2(a)(ii), the Debtors submit the following concise statement of the material terms of the Interim Order:

| Summary of Material Terms | | Location |
|---|---|---|
| **Entities with an Interest in Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(i)* | Prepetition Secured Parties | ¶ G |

---

[3]    Any summary of the terms of the Interim Order contained in this Motion is qualified in its entirety by reference to the provisions of the Interim Order. To the extent there is a conflict between the Motion and the Interim Order, the Interim Order shall control. The Debtors reserve the right to supplement the statements made herein.

| Summary of Material Terms | | Location |
|---|---|---|
| **Purposes for Use of Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(ii)* | To avoid immediate and irreparable harm to their businesses, the Debtors request access to Cash Collateral on an interim and final basis to fund the operation of their businesses in the ordinary course postpetition, as well as the administrative costs of these chapter 11 cases, as set forth in the Budget. | ¶ L, 2 |
| **Material Terms of the Use of Cash Collateral** *Bankruptcy Rule 4001(b)(1)(B)(iii)* *Local Rule 4001-2(a)(ii)* | Subject to the terms and conditions of the Interim Order and Final Order, at the times and for the purposes set forth in the Budget, the Debtors are authorized to use Cash Collateral until the earlier of (a) the effective date of a plan or plans of reorganization or liquidation confirmed in these chapter 11 cases, (b) immediately upon the occurrence of the Termination Events set forth in numbers 1, 5, 6, 7, 9, 10, 11, 13, 14, 15, 18, and 19 below, and (c) three (3) business days' after written notice of such Termination Event other than those set forth in the immediately preceding clause (b) to the Debtors, their restructuring counsel, the U.S. Trustee, and counsel to the Committee, subject to any extensions pending emergency rulings by this Court. | ¶ 2, 7, 12, 13 |
| **Duration of Use of Cash Collateral/ Termination Events/ Relief from Stay** *Bankruptcy Rule 4001(b)(1)(B)(iii)* *Local Rule 4001-2(a)(ii)* | The occurrence and continuance of any of the following events, unless waived in writing by the Administrative Agent (acting at the direction of the requisite Prepetition Secured Parties), shall constitute a termination event (each such event, a "Termination Event"): 1. April 30, 2020; 2. The failure by the Debtors to make, or cause to be made, any payment under the Interim Order when due; 3. The failure by the Debtors to deliver any of the material documents or other material information required to be delivered pursuant to the Interim Order when due or any such documents or other information shall contain a material misrepresentation; 4. The failure of any Loan Party to subordinate its liens under any Wind-Up Loan on terms and conditions reasonably satisfactory to Administrative Agent; 5. The failure to obtain entry of the Final Order within thirty-five (35) days of the Petition Date; 6. The Debtors shall grant, create, incur or suffer to exist any postpetition liens or security interests other than those permitted by the Interim Order; 7. An order shall be entered reversing, adversely amending, adversely supplementing, staying, vacating or otherwise adversely modifying any material provision of the Interim Order; 8. There shall be a breach by any Debtor of any material provisions of the Interim Order, or the Interim Order shall cease to be in full force and effect or shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment; 9. The Debtors file a motion seeking approval to create, incur, or suffer to exist any claim that is senior to the Adequate Protection Superpriority Claims; 10. The Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Superpriority Claim; | ¶ 12 |

| Summary of Material Terms | | Location |
|---|---|---|
| | 11. The Court shall have entered an order dismissing any of these chapter 11 cases; | |
| | 12. The entry of an order confirming a plan of reorganization or liquidation that is not acceptable to Administrative Agent; | |
| | 13. The Court shall have entered an order converting any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; | |
| | 14. The Court shall have entered an order authorizing the appointment or election of a trustee or examiner with expanded powers relating to the operation of the businesses in these chapter 11 cases; | |
| | 15. The Court shall have entered an order (other than any "first day" or "second day" orders entered in connection with motions and/or orders previously provided to and not objected to by Administrative Agent) granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Administrative Agent or any of the Prepetition Secured Parties with respect to any Prepetition Collateral or Cash Collateral; | |
| | 16. A filing or support by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Secured Obligations or asserting any other cause of action against and/or with respect to the Prepetition Secured Obligations, the Prepetition Collateral and Cash Collateral, or the Administrative Agent, any of the other Prepetition Secured Parties; | |
| | 17. The Debtors shall use Cash Collateral in any manner inconsistent with the Budget and the other terms of the Interim Order; | |
| | 18. Impairment or failure to preserve the Prepetition Secured Obligations, Adequate Protection Obligations, and/or their rights to credit bid the Prepetition Secured Obligations and/or Adequate Protection Obligations; | |
| | 19. The Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by any Prepetition Secured Party arising under the Credit Agreement, subject to certain exceptions; and | |
| | 20. The Debtors shall have failed to meet any of the milestones established in the Interim Order by the applicable deadline. | |
| | The automatic stay provisions of section 362 of the Bankruptcy Code shall be modified to permit the Debtors to implement and perform the terms of the Interim Order. | |
| **Proposed Adequate Protection** *Bankruptcy Rule 4001(b)(1)(B)(iv)* *Local Rule 4001-2(a)(ii)* | Debtors propose the following as adequate protection for the interests of the Prepetition Secured Parties in the Prepetition Collateral, | ¶ 3 |
| | 1. Subject only to the terms of the Interim Order, the Debtors are authorized to grant, and as of entry of the Interim Order are deemed to have granted, to the Administrative Agent an additional and replacement postpetition security interest and lien ((i) and (ii) below referred to collectively as "Adequate Protection Liens") (i) on the Debtors' post-petition assets which, but for the commencement of these chapter 11 cases, would constitute Prepetition Collateral, and (ii) to the extent of any diminution in the value, from and after the Petition Date, of the Prepetition Secured Parties' interests in the Prepetition Collateral | |

| Summary of Material Terms | Location |
|---|---|
| ("Diminution in Value") resulting from: (A) any postpetition use of Cash Collateral; (B) the use, sale, or lease of the Prepetition Collateral, and (C) the imposition of the automatic stay (collectively, "Adequate Protection Obligations"), on all of the rights, titles and interests of the Debtors and their "estates" in all property and rights and interests in property of each of the Debtors in existence as of the Petition Date as well as thereafter created or acquired, including without limitation, (1) all Prepetition Collateral, (2) all accounts and accounts receivable, inventory, chattel paper, equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents, investment property (including, without limitation, securities, securities accounts, and all equity interests in subsidiaries), books and records, patents, trademarks, trade names, copyrights, rights under license agreements and all other intellectual property, rights, rebates, refunds, other claims under and with respect to insurance policies, tax refunds, deposits, rebates, contract rights and other general intangibles, software, letter of credit rights, money and intercompany claims or receivables (whether or not evidenced by notes) at any time owing to each Debtor, (3) all real property, leaseholds, rents and profits and proceeds thereof (subject to certain limitations), (4) if not otherwise described, all of the property or rights in property identified as Collateral under the Credit Agreement, (5) all causes of action whether pursuant to federal or applicable state law, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, other than the Avoidance Actions (defined below), (6) upon entry of the Final Order, all claims and causes of action under Chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**") of the Debtors or their Estates, and (7) as to all of the foregoing, all rents, issues, products, proceeds, and profits of any of the foregoing (collectively, "Collateral").  The Adequate Protection Liens are subject or subordinate only to the Carve-Out. | |
| 2.  The Administrative Agent shall be granted, subject only to the Carve-Out, an allowed superpriority administrative expense claim (each an "Adequate Protection Superpriority Claim" and, collectively, "Adequate Protection Superpriority Claims") as provided for in section 507(b) of the Bankruptcy Code, payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof. | |
| 3.  The respective Prepetition Secured Parties shall, as set forth in the Interim Order, receive from the Debtors the following payments (collectively, "Adequate Protection Payments"): to the extent set forth in the Budget, and to the extent not otherwise paid in accordance with the terms of the Fifth Amendment, the Debtors are authorized to pay in full, in cash and in immediately available funds, as and when such payments would have come due under the Credit Agreement had these chapter 11 cases not been commenced, all interest, fees, and other amounts (other than principal), as applicable, accruing solely with respect to the API Americas Direct Obligation, which shall accrue and be payable at the applicable interest rate set forth in the Credit Agreement and at the times provided for in the Prepetition Loan Documents. | |
| 4.  As further adequate protection, subject to a review period, the Debtors are authorized to pay in cash, without the need for the filing of formal fee applications: (i) the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and | |

| Summary of Material Terms | Location |
|---|---|
| | disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Administrative Agent under the Prepetition Loan Documents arising prior to the Petition Date in connection with these chapter 11 cases; (ii) the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Administrative Agent under the Prepetition Loan Documents arising subsequent to the Petition Date in connection with these chapter 11 cases; and (iii) any other fees, costs, and expenses incurred by the Administrative Agent under the Prepetition Loan Documents in connection with these chapter 11 cases ("Adequate Protection Fees").<br><br>5.   The Debtors shall cooperate and/or comply with all reporting requirements of the Borrowers set forth in the Credit Agreement.   In addition, the Debtors shall provide the additional reporting as the Administrative Agent shall reasonably require.<br><br>6.   The Debtors shall permit the Administrative Agent and other Prepetition Secured Parties to have reasonable access to: (i) inspect the Debtors' assets and properties; (ii) examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, management, financial advisors, and consultants. | |
| **Carve-Out**<br>*Bankruptcy Rule 4001(b)(1)(B)(iii)*<br><br>*Local Rule 4001-2(a)(ii)* | The Adequate Protection Liens, Adequate Protection Superpriority Claims, and Prepetition Liens shall be subject only to the right of payment of the following expenses (collectively, "Carve-Out"), to the extent provided in the Interim Order: (a) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) with respect to the Debtors ("Statutory Fees"); and (b) the allowed fees and expenses actually incurred by persons or firms retained by the Debtors or any Committee on or after the Petition Date pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code (each a "Professional" and collectively, "Professionals") in a cumulative, aggregate sum of (i) for the period prior to the occurrence of the delivery of a Carve-Out Trigger Notice (as defined below), an amount not to exceed the lesser of (A) the aggregate amount budgeted for such Professionals in accordance with the Budget up to the time of such Carve-Out Trigger Notice, and (B) the actual amount of such Allowed Professional Fees for each Professional incurred on or after the Petition Date up through and including the date a Carve-Out Trigger Notice is delivered ("Allowed Professional Fees"), subject in all respects to the terms of the Final Order and the Budget.   The Carve-Out shall include all Allowed Professional Fees that are incurred or earned (1) at any time before delivery of a Carve-Out Trigger Notice, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice, subject and limited in all respects to the amounts set forth in the Budget for payment of such Professionals; and (2) beginning the first day after the delivery by the Administrative Agent of written notice (which for the avoidance of doubt may be by electronic mail) of the occurrence of Termination Event ("Carve-Out Trigger Notice") to the Debtors, the Debtors' counsel, the U.S. Trustee, and counsel for any Committee, the fees and expenses incurred by the Professionals retained by the Debtors in an aggregate amount not to exceed $100,000 ("Post-EOD Carve-Out Amount") (the aggregate amount of clauses (1) and (2), collectively, "Carve-Out Cap").   To the extent that proceeds of Collateral are used to fund the Carve-Out, Administrative Agent shall be reimbursed from any unencumbered assets. | ¶ 8 |

| Local Rule 4001-2 Concise Statements | | Location |
|---|---|---|
| **Cross Collateralization** *Local Rule 4001-2(a)(i)(A)* | The Interim Order does not provide for cross-collateralization, other than replacement liens and superpriority claims as adequate protection. | ¶ 4 |
| **Stipulations** *Local Rule 4001-2(a)(i)(B)* | The Interim Order contains provisions or findings of fact that bind the estate with respect to the validity, perfection or amount of Prepetition Secured Parties' claims and includes a waiver of claims against the Prepetition Secured Parties. The provisions of the Interim Order, including all findings and waivers therein, shall be binding upon the Debtors' estates and all other parties in interest, including the Committee (if any) or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), for all purposes unless (a) (i) any party in interest other than the Committee, no later than the date that is seventy five (75) days from entry of the first Interim Order, and (ii) the Committee, no later than sixty (60) days from the appointment of the Committee (as applicable for clauses (i) and (ii), "Initial Challenge Period") has properly filed an adversary proceeding as required under the Bankruptcy Rules (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition Secured Obligations, the liens of the Administrative Agent on the Prepetition Collateral securing the Prepetition Secured Obligations, or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Administrative Agent and/or any other Prepetition Secured Party on behalf of the Debtors' estates ((x) and (y), collectively, referred to herein as "Challenges"), and (b) the Court rules in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided*, that, as to the Debtors, all such Challenges are hereby irrevocably waived and relinquished effective as of the Petition Date. If during the Initial Challenge Period, the Committee or other third party files a motion for standing with a draft complaint identifying and describing all Challenges consistent with applicable law and rules of procedure, the Initial Challenge Period will be tolled solely for the Committee or such other third party and solely with respect to the Challenges asserted in the draft complaint until five (5) business days from the entry of an order granting the motion for standing to prosecute such Challenges described in the draft complaint and permitted by the Court ("Extended Challenge Period," together with the Initial Challenge Period, "Challenge Period"). If standing is denied by the Court, the Challenge Period shall be deemed to have expired. | ¶ 11 |
| **Section 506(c) Waiver** *Local Rule 4001-2(a)(i)(C)* | Subject to entry of the Final Order, the Interim Order prohibits costs or expenses of administration which have been or may be incurred in these chapter 11 cases or any subsequently converted bankruptcy case(s) of any Debtors from being charged against any of the Prepetition Secured Parties, their respective claims, the Prepetition Collateral or Cash Collateral, pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Administrative Agent. | ¶ 6 |

| | | |
|---|---|---|
| **Liens on Avoidance Actions**<br>*Local Rule 4001-2 (a)(i)(D)* | Subject to entry of the Final Order, the Adequate Protection Liens attach to avoidance actions and proceeds or property recovered in respect of such avoidance actions, if any.  The Prepetition Secured Parties have required Adequate Protection Liens on all causes-of-action and the proceeds thereof as a condition to the consensual use of Cash Collateral. | ¶ 3 |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt**<br>*Local Rule 4001-2 (a)(i)(E)* | The Interim Order does not deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt. | N/A |
| **Disparate Treatment of Professionals Under Carve-Out**<br>*Local Rule 4001-2(a)(1)(F)* | The Interim Order contains no provision for disparate treatment for Committee professionals, if any, with respect to the Carve-Out. | ¶ 8 |
| **Non-Consensual Priming Liens**<br>*Local Rule 4001-2(a)(i)(G)* | The Interim Order does not provide for non-consensual priming of any existing secured lien. | N/A |
| **Section 552 (b)(1) Waiver**<br>*Local Rule 4001-2(a)(i)(H)* | Subject to entry of the Final Order, the Interim Order entitles each of the Prepetition Secured Parties to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral. | ¶ 6 |

## Basis for Relief

### A.    The Debtors' Use of Cash Collateral Is Necessary

17.    A debtor's use of property of the estate, including cash collateral, is governed by section 363 of the Bankruptcy Code.  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral if: "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]." 11 U.S.C. § 363(c)(2).

18.    It is essential to the Debtors' reorganization prospects and their administration of a value-maximizing chapter 11 process that they have sufficient funds to operate in the ordinary course, and at a level that is on par or as close as possible to prepetition performance and in accordance with the Budget.  Absent the use of Cash Collateral, the Debtors will not have

sufficient working capital to: (a) make payments to employees, vendors, or suppliers, (b) satisfy

operating costs, and (c) fund the administrative costs of these chapter 11 cases.  The ability to

satisfy these expenses when due is essential to avoid immediate and irreparable harm to the

Debtors' estates.  In the normal course of business, the Debtors use cash on hand and cash flow

from operations and other sources to fund working capital and capital expenditures, and operate

and maintain their businesses and properties.  Absent immediate access, the Debtors will not

have adequate unencumbered cash on hand to pay these critical expenses.

**B.      The Proposed Adequate Protection is Reasonable and Appropriate**

19.     Section 363(e) of the Bankruptcy Code further provides that "on request of an

entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . .

shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection

of such interest."  11 U.S.C. § 363(e).

20.     The Bankruptcy Code does not expressly define "adequate protection."  Section

361 of the Bankruptcy Code, however, provides a non-exhaustive list of examples of adequate

protection, specifically including replacement liens.  *See* 11 U.S.C. § 361.  Section 361(3) of the

Bankruptcy Code goes on to provide the flexible concept that adequate protection may also take

other forms, so long as the relief "will result in the realization by [creditor] of the indubitable

equivalent of such [creditor's] interest in [cash collateral]."  *See* 11 U.S.C. § 361.  Generally,

courts decide what constitutes adequate protection on a case-by-case basis.  *See, e.g., Resolution*

*Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.),* 16 F.3d 552, 564 (3d

Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case

basis."); *In re N.J. Affordable Homes Corp,* No. 05-60442, 2006 WL 2128624, at *14 (Bankr.

D.N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible concept."); *In*

*re Columbia Gas Sys., Inc.,* Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) (emphasizing that "the varying analyses and results contained in the . . . slew of cases demonstrate that what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis"); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding") (internal citation omitted).

21.     In *Swedeland,* the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland Dev. Grp., Inc.,* 16 F.3d at 564 (quoting *In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Shaw Indus., Inc. v. First Nat'l Bank of Pa. (In re Shaw Indus., Inc.),* 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for.").

22.     As a condition to the use of Cash Collateral, the Prepetition Secured Parties required an adequate protection package consisting of Adequate Protection Liens, Adequate Protection Superpriority Claims, Adequate Protection Payments, Adequate Protection Fees, certain reporting requirements as described above and in the Interim Order, and certain access rights as described above and in the Interim Order (collectively, "Adequate Protection").

23.     The Debtors submit that the proposed Adequate Protection will sufficiently protect the Prepetition Secured Parties from any Diminution in Value of the Prepetition Collateral during the pendency of these proceedings and preserve the value for which the Prepetition Secured Parties bargained.

24.     Notwithstanding anything in the Interim Order or the Final Order to the contrary, the Debtors reserve the right to argue that, to the extent that any cash payment made under the Interim Order or the Final Order, as applicable, as adequate protection to the Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such payment should be recharacterized and applied as payment of principal amounts owed under the Credit Agreement and shall permanently reduce the Prepetition Loan Obligations accordingly.

25.     Without access to Cash Collateral, the Debtors will be unable to continue operating.  The Debtors believe the Adequate Protection is necessary and sufficient for the Debtors to continue to use Cash Collateral.  In light of the foregoing, the Debtors submit that the proposed Adequate Protection to be provided for the benefit of the Prepetition Secured Parties is appropriate.  The Debtors' proposed Adequate Protection is not only necessary to protect the Prepetition Secured Parties against any Diminution in Value, but are also fair and appropriate on an interim basis under the circumstances of these chapter 11 cases to ensure the Debtors are able to continue using the Cash Collateral in the near term for the benefit of all parties in interest and their estates.

**C.      The Scope of the Proposed Carve-Out Is Reasonable and Appropriate**

26.     The Adequate Protection is subject to the Carve-Out. Without it, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which professionals may be paid in these chapter 11 cases would be restricted.  *See, e.g., In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of

possible rights and powers.   Additionally, the Carve-Out protects against administrative insolvency during the course of these chapter 11 cases by ensuring that assets remain for payment of the U.S. Trustee fees and professional fees of the Debtors and a Committee.

**D.      Automatic Stay Should Be Modified on a Limited Basis**

27.      The relief requested herein contemplates a modification of the automatic stay to (a) permit the Debtors to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the Administrative Agent may request in its reasonable discretion to assure the perfection and priority of the liens granted in the Interim Order; (c) permit the Debtors to incur all liabilities and obligations to the Administrative Agent and the Prepetition Secured Parties under the Interim Order; and (d) subject to the Carve Out, authorize the Debtors to pay, and the Administrative Agent and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of the Interim Order.  The relief requested herein further contemplates that the automatic stay will be further modified and vacated to the extent necessary to permit the Administrative Agent, on behalf of itself and for the benefit of each of the Prepetition Secured Parties to, upon the expiration of the Default Notice Period (as defined in the Interim Order), exercise the rights and remedies available to it under the Prepetition Loan Documents, the Interim Order, or applicable law, as applicable, including, without limitation, foreclosing upon and selling all or a portion of the Collateral in order to collect and satisfy the Prepetition Secured Obligations and Adequate Protection Obligations, in accordance with the Interim Order.  Stay modifications of this kind are ordinary and standard features for the use of cash collateral, and in the Debtors' business judgment, are reasonable and fair under the circumstances.

**E.      Interim Relief Should Be Granted**

28.      Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the court is authorized to conduct an interim expedited hearing on the motion at which it may authorize a debtor to use cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.  *See* Fed. R. Bankr. P. 4001(b)(2).  Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]."  11 U.S.C. § 363(c)(3).

29.      Pending the Final Hearing, the Debtors require immediate access to Cash Collateral to satisfy the day-to-day needs of the Debtors' business operations.  Access to liquidity will help to address any concerns of employees, vendors or customers regarding the Debtors' financial health and ability to continue operations in light of these chapter 11 cases. The Debtors have an immediate need for liquidity to, among other things, maintain business relationships with their vendors and suppliers, pay payroll and certain benefits, and satisfy other essential working capital and operational needs, all of which are required to preserve and maintain the Debtors' going concern value for the benefit of all parties in interest.  In addition, the Budget establishes that the Debtors' use of Cash Collateral will not prejudice the Prepetition Secured Parties.

30.      Accordingly, pursuant to section 363(c)(3) of the Bankruptcy Code and Bankruptcy Rule 4001(b), the Debtors request an expedited hearing to consider the Motion and entry of the Interim Order authorizing the Debtors' use of Cash Collateral.

## Bankruptcy Rule 4001(a)(3) Should Be Waived

31.     The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3).    Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 4001(a)(3).  As explained above and in the First Day Declaration, the use of Cash Collateral is essential to prevent irreparable damage to the Debtors' operations.  Accordingly, ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

32.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  For the reasons discussed above and in the First Day Declaration, authorizing the Debtors to use Cash Collateral and granting the other relief requested herein is critical to the Debtors' ability to continue operating with the least amount of disruption as possible following the Petition Date.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  The relief requested is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

33.     Additionally, with respect to any aspect of the relief sought in this Application that constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to continue to preserve the value of their estate.  The Debtors thus submit that the requested waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is here appropriate.

**Reservation of Rights**

34.     Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or shall be construed as: (a) an admission as to the validity of any claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of any or all such liens.

**Notice**

35.     Notice of this Motion shall be given to (i) the Office of the United States Trustee for the District of Delaware;  (ii) the Debtors' 20 largest unsecured creditors on a consolidated basis; (iii) counsel to PNC Bank, N.A.; (iv) the United States Attorney for the District of Delaware; (v) the United States Attorney for the District of Kansas; (vi) the United States

Attorney for the District of Indiana; (vii) the offices of the attorneys general for the states in which the Debtors operate; (viii) the Internal Revenue Service; (ix) the Pension Benefit Guaranty Corporation; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this motion is seeking "first day" relief, within two business days of the hearing on this Motion, Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

36.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

<u>**Conclusion**</u>

WHEREFORE, the Debtors respectfully request the entry of the proposed Interim and

Final Orders, granting the relief requested herein and such other and further relief as is just and

proper.

Dated: February 2, 2020
Wilmington, Delaware

        **SAUL EWING ARNSTEIN & LEHR LLP**

        */s/ Monique Bair DiSabatino*
        Mark Minuti (DE Bar No. 2659)
        Monique Bair DiSabatino (DE Bar No. 6027)
        1201 North Market Street, Suite 2300
        P.O. Box 1266
        Wilmington, DE 19899
        Telephone:  (302) 421-6800
        Email: mark.minuti@saul.com
        Email:  monique.disabatino@saul.com

        -and-

        Mark D. Sherrill (*pro hac vice* pending)
        EVERSHEDS SUTHERLAND (US) LLP
        1001 Fannin, Suite 3700
        Houston, TX  77002
        Telephone: (713) 470-6100
        Email:  marksherrill@eversheds-sutherland.com

        -and-

        Edward P. Christian (*pro hac vice* pending)
        EVERSHEDS SUTHERLAND (US) LLP
        Grace Building
        1114 6th Avenue, 40th Floor
        New York, NY 10036
        Telephone: (212) 389-5000
        edwardchristian@eversheds-sutherland.com

        *Proposed Counsel to the Debtors*