# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>**API AMERICAS INC.**, *et al.*,<br><br>        Debtors. | ) <br>) **Chapter 11** <br>) <br>) **Case No. 20-10239 (CSS)** <br>) <br>) **(Jointly Administered)** <br>) <br>) **Re: Docket Nos. 9, 31** <br>) <br>) **Obj. Deadline: 2/19/20, 4:00 p.m.** <br>) **Hearing Date: 2/26/20, 2:00 p.m.** <br>) |

**OBJECTION OF CONSTELLATION NEWENERGY – GAS DIVISION, LLC
TO THE MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE
OF PAYMENT FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY
COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, (III)
APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING
ADEQUATE ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF**

Constellation NewEnergy – Gas Division, LLC ("CNEG"), hereby objects to the *Motion of the Debtors For Entry of Interim and Final Orders (I) Approving the Debtors' Proposed Adequate Assurance of Payment For Future Utility Services, (II) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures For Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* (the "Utility Motion")(Docket No. 9), and sets forth the following:

## Introduction

The Debtors' Utility Motion improperly seeks to shift the Debtors' obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of payment requested by CNEG under Section 366(c)(2) to setting the form and amount of the adequate assurance of

ME1 32665922v.1

payment acceptable to the Debtors. This Court should not permit the Debtors to shift their statutory burden.

The Debtors seek to have this Court approve their form of adequate assurance of payment, which is a bank account containing $55,250 that supposedly reflects approximately two weeks of utility charges, calculated as a historical average over the past twelve months(the "Bank Account"). The Court should reject the Debtors' proposed Bank Account because: (1) CNEG bills the Debtors on a monthly basis and provides the Debtors with generous payment terms pursuant to the Gas Agreement (as defined below), and a two-week account is not sufficient in amount or in form to provide CNEG with adequate assurance of payment; (2) Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include a segregated bank account; and (3) even if this Court were to improperly consider the Bank Account as a form of adequate assurance of payment for CNEG, the Court should reject it as an insufficient form of adequate assurance of payment for the reasons set forth in Section A.1. of this Objection.

CNEG is seeking a two-month cash deposit in the amount of $30,142 from the Debtors, which is an amount that CNEG can obtain pursuant to the Gas Agreement (as defined below). Based on all the foregoing, this Court should deny the Utility Motion as to CNEG because the amount of the CNEG post-petition deposit request is reasonable under the circumstances and should not be modified.

ME1 32665922v.1

## Facts

### Procedural Facts

1. On February 2, 2020 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. The Debtors' chapter 11 bankruptcy cases are being jointly administered.

### The Utility Motion

3. On the Petition Date, the Debtors filed the Utility Motion.

4. Because CNEG was not properly or timely served with the Utility Motion and the Debtors never attempted to contact CNEG regarding its adequate assurance request prior to the filing of the Utility Motion, CNEG had no opportunity to respond to the Utility Motion or otherwise be heard at the *ex parte* hearing on the Utility Motion that took place on February 4, 2020, despite the fact that Section 366(c)(3) (presuming this was the statutory basis for the relief sought by the Debtors) requires that there be "notice and a hearing" to CNEG.

5. On February 4, 2020, the Court entered the *Interim Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment For Future Utility Services, (II) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures For Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* (the "Interim Utility Order")(Docket No. 31). The Interim Utility Order set an objection deadline of February 19, 2020 and the final hearing on the Utility Motion to take place on February 26, 2019 at 2:00 p.m.

6. Through the Utility Motion, the Debtors seek to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for their own form of adequate assurance of payment, which is the Bank Account containing $55,250 that supposedly reflects approximately two weeks of utility charges, calculated as a historical average over the past twelve months. Utility Motion at ¶ 11.

7. The proposed Bank Account is not acceptable to CNEG and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtors to establish the form or amount of adequate assurance of payment. Under Sections 366(c)(2) and (3), this Court and the Debtors are limited to modifying, if at all, the amount of the security sought by CNEG under Section 366(c)(2).

8. The Debtors claim that to the best of their knowledge, there are few, if any, material defaults or arrearages with respect to the Debtors' payment of undisputed utility bills. Utility Motion at ¶ 9. However, Section 366(c)(3)(B)(ii) expressly provides that in making an adequate assurance of payment determination, a court may not consider a debtor's timely payment of prepetition utility charges.

9. The Debtors' propose that any monies contained in the Bank Account on behalf of a utility shall be returned to the Debtors on the earlier of (i) reconciliation and payment of a Utility's final invoice, (ii) the closing of a sale of all or substantially all of the Debtors' assets, or (iii) the effective date of a chapter 11 plan. Utility Motion at ¶ 13. As CNEG bills the Debtors in arrears, and CNEG would likely provide post-petition utility goods/services to the Debtors through a sale closing date or the effective date of a plan, any monies contained in the Bank

4

Account on behalf of CNEG should not be returned to the Debtors until the Debtors confirm that they have paid in full their post-petition utility expenses owed to CNEG.

10. The Utility Motion does not address why the Bank Account would be underfunded with only two-weeks of utility charges when the Debtors know that CNEG is required by contract to bill the Debtors monthly. Moreover, presumably the Debtors want CNEG to continue to bill them monthly and provide them with the same generous payment terms that they received prepetition. Accordingly, if the Bank Account is relevant, which CNEG disputes, the Debtors need to explain: (A) why they are only proposing to deposit a supposed two-week amount into the Bank Account for CNEG; and (B) how such an insufficient amount could even begin to constitute adequate assurance of payment for CNEG's monthly bills.

11. Furthermore, the Utility Motion does not address why this Court should consider modifying, if at all, the amount of CNEG's adequate assurance request pursuant to Section 366(c)(2). Rather, without providing any specifics, the Utility Motion merely states that the Bank Account, "in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business," constitutes sufficient adequate assurance of payment to the Debtors' utility providers. Utility Motion at ¶ 14.

## The Debtors' Use of Cash Collateral

12. On the Petition Date, the Debtors filed the *Motion of the Debtors For Interim and Final Agreed Orders (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "Cash Collateral Motion")(Docket No. 11).

13. Through the Cash Collateral Motion, the Debtors sought a carve-out for the payment of approved fees of the Debtors' professionals incurred prior to the delivery of a Carve-Out Trigger Notice, plus an additional $100,000 incurred subsequent to the delivery of a Carve-Out Trigger Notice (the "Carve-Out"). Cash Collateral Motion at page 11.

14. On February 4, 2020, the Court entered the *Interim Agreed Order (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief*
(the "Interim Cash Collateral Order").

15. The Interim Cash Collateral Order approved the Carve-Out. Interim Cash Collateral Order at pages 24-25.

16. Attached as Exhibit "1" to the Interim Cash Collateral Order is a thirteen-week budget through May 1, 2020. It is unclear whether the Debtors have budgeted sufficient sums for the timely payment of post-petition utility charges.

## The Debtors' Critical Vendor Motion

17. On the Petition Date, the Debtors filed the *Motion of the Debtors For Entry of Interim and Final Orders Authorizing Payment of Prepetition Claims of Certain Critical Vendors* (the "Critical Vendor Motion")(Docket No. 10). Through the Critical Vendor Motion, the Debtors sought authority to pay the prepetition claims of certain supposed critical vendors of up to $250,000 on an interim basis and $500,000 on a final basis.

18. The Critical Vendor Motion does not reflect that the Debtors seek Court authority to pay prepetition utility charges.

19. On February 4, 2020, the Court entered the *Interim Order Authorizing Payment of Prepetition Claims of Certain Critical Vendors* (the "Interim Critical Vendor Order") (Docket No. 33). The Interim Critical Vendor Order authorized the Debtors to pay up to $250,000 of critical vendor claims on an interim basis. Interim Critical Vendor Order at ¶ 2.

### **Facts Regarding CNEG**

20. CNEG provides natural gas and related services to the Debtors pursuant to the Master Gas Sale and Transportation Contract, the Amendment thereto and related Transaction Confirmation (collectively, the "Gas Agreement") that set forth the terms and conditions concerning CNEG's provision of natural gas and related services to the Debtors. CNEG has continued to provide the Debtors with natural gas and related services pursuant to the Gas Agreement since the Petition Date.

21. Pursuant to the Gas Agreement, the Debtors receive approximately one month of natural gas and related services before CNEG issues a bill. Once a bill is issued, the Debtors have 15 days to pay the applicable bill. If the Debtors fail to timely pay a bill, a late fee may be subsequently imposed on the account. Accordingly, the Debtors could receive approximately two months of natural gas and related services before CNEG could terminate the Gas Agreement after a post-petition payment default.

22. The estimated pre-petition debt owed by the Debtors to CNEG is approximately $24,000. CNEG is requesting a two-month cash deposit of $30,142 as adequate assurance of payment from the Debtors, which is an amount it can obtain from the Debtors pursuant to the terms and conditions of the Gas Agreement.

**Discussion**

**A.    THE UTILITY MOTION SHOULD BE DENIED AS TO CNEG.**

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2)    Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;
>
> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. *In re* Lucre, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005). If a debtor believes the **amount** of the utility's request needs to be modified, then the debtor can file a motion under Section 366(c)(3) requesting the court to modify the **amount** of the utility's request under Section 366(c)(2).

In this case, the Debtors filed the Utility Motion to improperly shift the focus of their obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of

payment requested under Section 366(c)(2) to setting the form and amount of the adequate assurance of payment acceptable to the Debtors. Accordingly, this Court should not reward the Debtors for their failure to comply with the requirements of Section 366(c) and deny the Utility Motion as to CNEG.

> **1. The Debtors' Proposed Bank Account Is Not Relevant And Even If It Is Considered, It Is Unsatisfactory Because It Does Not Provide CNEG With Adequate Assurance of Payment.**

This Court should not even consider the Bank Account as a form of adequate assurance of payment because: (1) It is not relevant because Section 366(c)(3) provides that a debtor can only modify "the amount of an assurance of payment under paragraph (2)"; and (2) The Bank Account is not a form of adequate assurance of payment recognized by Section 366(c)(1)(A). Moreover, even if the Court were to consider the Bank Account, the Bank Account is an improper and otherwise unreliable form of adequate assurance of future payment for the following reasons:

1. Unlike the statutory approved forms of adequate assurance of payment, the Bank Account is not something held by CNEG. Accordingly, CNEG would have no control over how long the Bank Account will remain in place.

2. In order to access the Bank Account, CNEG would have to incur the expense to draft, file and serve a default pleading with the Court and possibly litigate the demand if the Debtors refuse to honor a disbursement request.

3. It is underfunded from the outset because CNEG issues monthly bills and by the time a default notice is issued the Debtors will have received approximately 60 days of commodity.

4. The Debtors are not required to replenish the Bank Account following pay-outs.

5. The Debtors may close the Bank Account before all post-petition utility charges are paid in full.

9

Accordingly, the Court should not approve the Bank Account as adequate assurance as to CNEG because the Bank Account is: (a) not the **form** of adequate assurance requested by CNEG; (b) not a form recognized by Section 366(c)(1)(A); and (c) an otherwise unreliable form of adequate assurance.

### 2. The Utility Motion Should Be Denied As To CNEG Because the Debtors Have Not Set Forth Any Basis For Modifying CNEG's Requested Deposit.

In the Utility Motion, the Debtors fail to address why this Court should modify the amount of CNEG's request for adequate assurance of payment. Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amount of CNEG's adequate assurance of payment request should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). However, the Debtors do not provide the Court with any evidence or factually supported documentation to explain why the amount of CNEG's adequate assurance request should be modified. Accordingly, the Court should deny the relief requested by Debtors in the Utility Motion and require the Debtors to comply with the requirements of Section 366(c) with respect to CNEG.

ME1 32665922v.1

B.  **THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY CNEG PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense, without more, could constitute adequate assurance of payment in certain cases. Section 366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

CNEG bills the Debtors on a monthly basis for the charges already incurred by the Debtors in the prior month. CNEG then provides the Debtors with 10 days to pay a bill before a late fee may be charged, and also provides written notice before utility goods/services can be

11

terminated for non-payment pursuant to the Gas Agreement. Based on the foregoing contract-mandated billing cycle, the minimum period of time the Debtors could receive service from CNEG before termination of service for non-payment of post-petition bills is approximately two (2) months. Moreover, even if the Debtors timely pay their post-petition utility bills, CNEG still has potential exposure of approximately 60 days based on its billing cycle. Furthermore, the amount of CNEG deposit request is the amount that the Gas Agreement permits CNEG to request from the Debtors. CNEG is not taking the position that the deposit that it is entitled to obtain pursuant to the Gas Agreement is binding on this Court, but instead is introducing that amount as evidence of amount that the Gas Agreement permits CNEG to request from the Debtors.

Moreover, in contrast to the improper treatment proposed for CNEG, the Debtors have made certain that supposed "critical vendors" and post-petition professionals are favored creditors over CNEG by ensuring (i) the payment of Critical Vendor Claims in an aggregate amount not to exceed $250,000 on an interim basis and $500,000 on a final basis, and that (ii) the post-petition bills/expenses of Debtors' counsel are paid, even in the event of a post-petition default on the use of DIP financing and cash collateral, by seeking a $100,000 professionals carve-out for the payment of their fees/expenses after a default and a guarantee of payment for fees incurred up to a default. Therefore, despite the fact that CNEG continues to provide the Debtors with crucial post-petition utility goods/services on the same generous terms that were provided prepetition, with the possibility of non-payment, the Debtors are seeking to deprive CNEG of any adequate assurance of payment for which it is entitled to for continuing to provide the Debtors with post-petition utility goods/services. Against this factual background, it is reasonable for CNEG to seek and be awarded the full security they have requested herein.

12

WHEREFORE, the CNEG respectfully requests that this Court enter an order:

1. Denying the Utility Motion as to CNEG;

2. Awarding CNEG the post-petition adequate assurance of payment pursuant to Section 366 in the amount and form satisfactory to CNEG, which is the form and amount requested herein; and

3. Providing such other and further relief as the Court deems just and appropriate.

Dated: February 18, 2020        McCARTER & ENGLISH, LLP

/s/ *William F. Taylor, Jr.*
William F. Taylor, Jr. (#2936)
405 North King Street, 8th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6300
Facsimile: (302) 984-6399
E-mail: wtaylor@mccarter.com

*-and-*

Russell R. Johnson III (VSB No. 31468)
John M. Craig (VSB No. 32977)
LAW FIRM OF RUSSELL R. JOHNSON III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
E-mail: russell@russelljohnsonlawfirm.com
        john@russelljohnsonlawfirm.com

*Counsel for Constellation NewEnergy – Gas Division, LLC*

13