## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| API AMERICAS INC., et al., | § | Case No. 20-10239 (CSS) |
| | § | |
| Debtors.[1] | § | Jointly Administered |
| | § | |
| | § | **Related to Docket Nos. 11, 34, 35, 58 and 91** |

## SECOND INTERIM AGREED ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

Upon the motion ("Motion") of the above-captioned Debtors, as debtors in possession, for entry of an interim order and a final order, pursuant to sections 105, 361, 362, 363, 506(c), 507(b), and 552(b) of title 11 of the United States Code ("Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules"), seeking, among other things:

(a)    authorization for the Debtors' use of Cash Collateral (as defined below), and any proceeds thereof, for an interim period;

(b)    the grant of adequate protection as of the Petition Date (as defined below) to Administrative Agent (as defined below), for itself and for the Lenders (as defined below), pursuant to section 361, 362, and 363(e) of the Bankruptcy Code, for any diminution in value of their interests in the Prepetition Collateral (as defined below) resulting from the Debtors' use of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: API (USA) Holdings Limited (3934), and API Americas Inc. (9126). The location of the Debtors' service address is: 3841 Greenway Circle, Lawrence, Kansas 66046.

Cash Collateral (as defined below) and imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(c)     modification by the Court of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Parties (as defined below) to implement and effectuate the terms and provisions of this second interim agreed order ("Second Interim Order"), subject to notice and a hearing as provided herein;

(d)     subject to entry of a final order ("Final Order"), waiver of the Debtors' ability to surcharge against the Prepetition Collateral or the Adequate Protection Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law and waiver of the applicability of the "equities of the case" exception under 552(b) of the Bankruptcy Code;

(e)     scheduling of a final hearing ("Final Hearing") to consider entry of the Final Order; and

(f)     waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of this Second Interim Order;

and upon the notice of proposed counsel to the Debtors regarding their agreement to continue the Final Hearing on the Motion to March 25, 2020 at 2:00 p.m. (ET), with the Committee's Objection Deadline extended to March 12, 2020 at 4:00 p.m. (ET); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in

2

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and the evidence in support thereof and having heard the statements in support of the relief requested in the Motion at a hearing on February 4, 2020 before this Court ("Interim Hearing"); and this Court having entered an order in connection with the use of Cash Collateral [D.I. 34] ("First Interim Order"); and this Court having determined that the legal and factual bases set forth in the Motion, the *Declaration of Mitchell Gendel in Support of Chapter 11 Filing and First Day Pleadings* [D.I. 2], and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

A.     *Disposition.*  The relief requested in the Motion is hereby granted on an interim basis on the terms set forth below.  Any objections to the Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Second Interim Order shall become effective immediately upon its entry.

B.     *Petition Date.*  On February 2, 2020 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code ("Chapter 11 Cases") with this Court.

---

[2]    In accordance with Bankruptcy Rule 7052, any proposed finding of fact more properly classified as a proposed legal conclusion shall be deemed as such, and any proposed conclusion of law more properly classified as a proposed factual finding shall also be deemed as such.

C.     *Debtors in Possession.*  The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases.

D.     *Jurisdiction and Venue.*  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief granted herein are sections 105, 361, 362, 363, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rule 2002-1, 4001-2, and 9013-1(m).

E.     *Committee Formation.*  An official unsecured creditors committee ("Committee") was appointed on February 13, 2020.

F.     *Notice.*  In accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Rules, notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors to (i) the Office of the United States Trustee for the District of Delaware;  (ii) the Debtors' 20 largest unsecured creditors on a consolidated basis; (iii) counsel to Administrative Agent; (iv) counsel to the Committee; (v) the United States Attorney for the District of Delaware; (vi) the United States Attorney for the District of Kansas; (vii) the United States Attorney for the District of Indiana; (viii) the offices of the attorneys general for the states in which the Debtors operate; (ix) the Internal Revenue Service; (x) the Pension Benefit Guaranty Corporation; and (xi) any party that has requested notice pursuant to

36615203.2 02/26/2020

Bankruptcy Rule 2002. As this motion is seeking "first day" relief, within two business days of the hearing on the Motion, Debtors will serve copies of the Motion and any order entered with respect to the Motion as required by Local Rule 9013-1(m).

      G.    *Debtors' Representations and Stipulations.* Without prejudice to the rights of any other party, but in each case subject to the limitations contained in Paragraph 5 below, the Debtors represent, admit, stipulate, and agree (collectively, "Debtors' Stipulations") as follows:

      (i)    *Prepetition Credit Facility.* SPH Group Holdings LLC, Steel Excel Inc., API Americas Inc. ("API Americas"), Handy & Harman Group Ltd, and iGo, Inc. (collectively, "U.S. Borrowers"), Cedar 2015 Limited, as U.K. borrower ("U.K. Borrower" and collectively with U.S. Borrowers, "Borrowers"), the other Loan Parties as defined in the Credit Agreement (as defined below) party thereto ("Loan Parties"), each of the lenders from time to time party thereto ("Lenders"), and PNC Bank, National Association ("PNC"), as administrative agent (in such capacity, "Administrative Agent," and together with the Lenders, "Prepetition Secured Parties"), are parties to that certain Credit Agreement dated as of November 14, 2017 (as amended, modified, restated, amended and restated, and/or supplemented from time to time, "Credit Agreement" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including the "Loan Documents" as such term is defined in the Credit Agreement, "Prepetition Loan Documents"), which provided the Borrowers with a $700 million credit facility ("Credit Facility"). The Credit Facility consists of: (a) a $500 million revolving credit facility

("RC Facility," and such loans thereunder, "Revolving Loans"), which includes a $50 million subfacility for the issuance of swing loans ("Swing Loans") and a $50 million subfacility for the issuance of letters of credit ("Letters of Credit"), and (b) a $200 million term loan facility ("Term Loan Facility," and such loans thereunder, "Term Loan"). All indebtedness, liabilities, and obligations under the Prepetition Loan Documents, specifically including all "Obligations" as defined in the Credit Agreement which includes the API Americas Direct Obligation (as defined below), are referred to herein as "Prepetition Secured Obligations." Each of the Prepetition Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the Loan Parties, including the Debtors, party to any Prepetition Loan Documents.

(ii)     *Prepetition Obligations of Debtors.* The Credit Facility is structured to allow each of the Borrowers to borrow directly or through the Borrowing Agent (as defined in the Credit Agreement) Revolving Loans and the U.S. Borrowers are also obligated with respect to the Term Loan. API Americas is the only Borrower which is also a Debtor and API (USA) Holdings LTD is the only Guarantor (as defined in the Credit Agreement) which is also a Debtor and thus are the subjects of the Chapter 11 Cases.

(iii)     *Prepetition Secured Obligations.* As of the Petition Date, the Debtors were justly and lawfully indebted and liable under the Prepetition Loan Documents, without defense, counterclaim, reduction or offset of any kind, in the aggregate principal amount of not less than (A) $44,388,238.42 in respect of loans and other financial accommodations made by the Lenders comprised of the principal amount of loans outstanding under RC Facility advanced directly to API Americas ("API Americas Direct

Obligation"), plus (B) as a co-obligor and Loan Party with respect to an aggregate amount of $189,964,143.58 with respect to Revolving Loans and the face amount of issued and outstanding Letters of Credit and Swing Loans advanced to, or issued for the benefit of, Borrowers other than API Americas and $190,000,000.00 with respect to the Term Loan, pursuant to, and in accordance with, the Credit Agreement and other Prepetition Loan Documents, plus accrued and unpaid interests, fees, costs and expenses (including counsel, financial advisors, consultants, accountants, to the extent applicable, chargeable or reimbursable under the Prepetition Loan Documents) with respect to each of the foregoing.

(iv)    *Prepetition Liens.*  Pursuant to and as more particularly described in the Prepetition Loan Documents, the Prepetition Secured Obligations are secured by, among other things, first priority liens on, security interests in, and assignments and pledges of (collectively, "Prepetition Liens"), all of the Debtors' right, title, and interest in the Debtors' personal property (to the extent provided in and as more fully described in the Prepetition Loan Documents, "Prepetition Collateral"), subject to any other valid, perfected and unavoidable lien or security interest otherwise existing as of the Petition Date that is senior to the security interest of the Prepetition Secured Parties, to the extent such liens or security interests are valid, perfected and unavoidable liens or security interests existing as of the Petition Date and otherwise senior to the Prepetition Liens as of the Petition Date (collectively, "Prepetition Permitted Liens" and each a "Prepetition Permitted Lien").

(v)    *Validity of Prepetition Liens and Prepetition Secured Obligations.*  The Prepetition Liens are (a) valid, binding, perfected, duly recorded and enforceable liens on,

7

and security interests in, all of the Debtors' respective right, title, and interest in, and to, the Prepetition Collateral and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity. Each Debtor (i) irrevocably releases and waives, for itself and its estate, any right to challenge or contest in any way the scope, extent, perfection, priority, validity, non-avoidability, or enforceability of the Prepetition Liens or the validity, or enforceability of the Prepetition Loan Documents or the validity, enforceability, or priority of payment of the Prepetition Secured Obligations, and (ii) forever releases and waives, any claims, objections, challenges, counterclaims, causes of action, defenses, setoff rights, obligations, rights to subordinate, or any other liabilities, whether arising in equity or under the Bankruptcy Code or applicable nonbankruptcy law, against the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, consultants, advisors, professionals, officers, directors, and employees from the beginning of time through the Petition Date. The Prepetition Liens were granted to the respective Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Prepetition Loan Documents. No portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to any contest,

8

attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

H.      *Adequate Protection for the Prepetition Secured Parties.*  As a result of the authorization for the Debtors' sale, use, or lease of Prepetition Collateral and the imposition or enforcement of the automatic stay of section 362 of the Bankruptcy Code, the Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code for any diminution in the value, from and after the Petition Date, of their interests in the Prepetition Collateral resulting from the automatic stay and/or from the Debtors' use of the Prepetition Collateral.  As adequate protection for the imposition of the automatic stay and such use of the Prepetition Collateral, the Prepetition Secured Parties will receive the adequate protection described in this Second Interim Order, and, in light of such adequate protection, the Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral, solely on the terms and conditions set forth in this Second Interim Order.  The adequate protection provided herein, and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the Bankruptcy Code.  The adequate protection provided herein, and other benefits and privileges contained herein are necessary in order to (i) protect the Prepetition Secured Parties from any diminution of their interests in the value of the Prepetition Collateral (including the proceeds thereof) and (ii) obtain the foregoing consents and agreements.

I.      *Cash Collateral.*  For purposes of this Second Interim Order, the term "Cash Collateral" shall be deemed to include, without limitation, all of each Debtor's "Cash Collateral"

9

as defined under section 363 of the Bankruptcy Code, all deposits subject to setoff and cash arising from the collection or other conversion to cash of any and all property (whether real or personal) in which the Prepetition Secured Parties have valid, perfected security interests, liens or mortgages, regardless of whether such security interests, liens, or mortgages existed as of the Petition Date or arise thereafter or pursuant to the Interim Order or this Second Interim Order.

J.      *Section 552(b); Section 506(c).*   Subject to entry of the Final Order, each of the Prepetition Secured Parties are entitled to (a) all of the rights and benefits of section 552(b) of the Bankruptcy Code in connection with the use of any of the Prepetition Collateral and Cash Collateral and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to them with respect to the proceeds, products, offspring or profits with respect to any of the Prepetition Collateral and Cash Collateral, and (b) a waiver by the Debtors' and their respective estates of their right to surcharge the Prepetition Collateral and Cash Collateral pursuant to section 506(c) of the Bankruptcy Code.

K.      *Necessity of Relief Requested.*   Good cause has been shown for the entry of this Second Interim Order.  The Debtors have an immediate need to continue to use Cash Collateral to, among other things, fund the orderly continuation of their businesses, maintain the confidence of their customers and vendors, pay their operating expenses, and preserve their going-concern value, consistent with the Budget (as defined below).  In the absence of the availability of such liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors, their estates and their creditors would occur.  The terms for the Debtors' use of Cash Collateral pursuant to this Second Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair

consideration. The Debtors have requested entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d). Absent granting the relief sought herein, the Debtors' estates would be immediately and irreparably harmed. The continued use of Cash Collateral in accordance with this Second Interim Order is therefore in the best interest of the Debtors and their estates, their creditors and other parties in interest.

L.    *Use of Cash Collateral.* All Cash Collateral, including proceeds of the Prepetition Collateral shall be used only for: (i) working capital; (ii) other general corporate purposes of the Debtors; (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Cases, including, without limitation, payment of any prepetition obligations that are necessary to preserve the value of the Debtors' estates to the extent approved by the Court; and (iv) Adequate Protection Payments (as defined below), and for no other purpose, and shall only be used and/or applied in accordance with the terms and conditions of this Second Interim Order, including, without limitation, the Budget.

M.    *Need for Immediate Entry of this Second Interim Order.* The Debtors have requested immediate entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors. The Court concludes that entry of this Second Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow the Debtors to preserve and maintain the value of their assets and businesses and enhance the Debtors' prospects for a successful reorganization.

Based upon the foregoing findings and conclusions, and upon the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor;

36615203 2 02/26/2020

**IT IS HEREBY ORDERED THAT**:

1.      *Motion Granted.*  The Motion is granted on an interim basis as set forth in this Second Interim Order.  Any objections to the Motion with respect to entry of this Second Interim Order, to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled.

2.      *Authorization to Use Cash Collateral.*  The Debtors are authorized to use Cash Collateral as set forth in this Second Interim Order commencing from the Petition Date through and including (but not beyond) any Termination Date (as defined below), subject to the terms and conditions of this Second Interim Order and solely in accordance with the 13-week cash flow forecast of cash receipts and disbursements of the Debtors on a consolidated basis for the period commencing on the Petition Date, attached as Exhibit 1 to this Second Interim Order ("Initial Budget", and any updated budget as required by Paragraph 7(a) ("Updated Budget"), which Initial Budget and each Updated Budget shall be subject to and include the Permitted Variance (as defined below), and each such Initial Budget (including the Permitted Variance) and each such Updated Budget (including the Permitted Variance) shall be referred to herein as a "Budget"), which Initial Budget is deemed acceptable to the Administrative Agent; and any Updated Budget shall be reasonably acceptable to the Administrative Agent.

3.      *Adequate Protection for the Prepetition Secured Parties.*

(a)      Subject only to the terms of this Second Interim Order, pursuant to sections 361, 362, 363(c)(2), and 363(e) of the Bankruptcy Code and in consideration of the stipulations and consents set forth herein, the Debtors hereby grant to the Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, an additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date, postpetition security interest in and lien ((i) and (ii) below referred to collectively as

12

"Adequate Protection Liens") (i) on the Debtors' post-petition assets which, but for the commencement of the Chapter 11 Cases, would constitute Prepetition Collateral in which the Prepetition Secured Parties had a valid and perfected security interest as of the Petition Date, and (ii) to the extent of any diminution in the value, from and after the Petition Date, of the Prepetition Secured Parties' interests in the Prepetition Collateral ("Diminution in Value") resulting from: (A) any postpetition use of Cash Collateral; (B) the use, sale, or lease of the Prepetition Collateral, and (C) the imposition of the automatic stay (collectively, "Adequate Protection Obligations"), on all of the rights, titles and interests of the Debtors and their "estates" (as created pursuant to section 541(a) of the Bankruptcy Code) in, to, and under all property and rights and interests in property of each of the Debtors of any kind or nature whatsoever in existence as of the Petition Date as well as thereafter created or acquired, and wherever located, including without limitation, (1) all Prepetition Collateral, (2) all accounts and accounts receivable, inventory, chattel paper, equipment, fixtures, machinery, commercial tort claims, deposit accounts, instruments, documents, cash and cash equivalents, investment property (including, without limitation, securities, securities accounts, and all equity interests in subsidiaries), books and records, patents, trademarks, trade names, copyrights, rights under license agreements and all other intellectual property, rights, rebates, refunds, other claims under and with respect to insurance policies, tax refunds, deposits, rebates, contract rights and other general intangibles, software, letter of credit rights, money and intercompany claims or receivables (whether or not evidenced by notes) at any time owing to each Debtor, (3) all real property, leaseholds, rents and profits and proceeds thereof; (*provided, however*, that as to a lien on all fee, leasehold, and other real property interests and the proceeds thereof: (x) with respect to non-residential real property leases, no liens or encumbrances shall be granted or extended to

13

such leases under this Second Interim Order, except as permitted by the applicable lease or pursuant to applicable law, but if any such restriction applies, liens shall then be deemed to extend only to the economic value of proceeds of any sale or other disposition of, and any other proceeds or products of, such leasehold interests; and (y) should any Lender's internal regulatory or compliance requirements require the completion of either or both flood due diligence and obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then until completion of such flood due diligence, the Administrative Agent shall be deemed to have obtained a lien only on the economic value of, proceeds of any sale or other disposition of such real property interests), (4) if not otherwise described, all of the property or rights in property identified as Collateral (as defined in the Credit Agreement), (5) all causes of action whether pursuant to federal or applicable state law, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, other than the Avoidance Actions (defined below), (6) upon entry of the Final Order, all claims and causes of action under Chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") of the Debtors or their Estates, and (7) as to all of the foregoing, all rents, issues, products, proceeds (including insurance policies), and profits of, from, or generated by any of the foregoing (collectively, "Collateral"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents. The Adequate Protection Liens are subject or subordinate only to the Carve-Out.  Subject to Paragraph 5(a) below, the Adequate Protection Liens shall not be subject or subordinate to or made *pari passu* with (x) any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (y) any intercompany

claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) any other lien or security interest under Bankruptcy Code sections 361 or 363 or otherwise except as expressly provided in this Second Interim Order.

(b)    *Adequate Protection Superpriority Claims*.  The Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted, subject only to the Carve-Out, an allowed superpriority administrative expense claim (each an "Adequate Protection Superpriority Claim" and, collectively, "Adequate Protection Superpriority Claims") as provided for in section 507(b) of the Bankruptcy Code, payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.  Subject only to the Carve-Out, and except as provided below, the Adequate Protection Superpriority Claims shall have priority over any and all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of a Final Order), 507, 546(c), 552(b) (subject to the entry of a Final Order), 726, and 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment) and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Case(s) or any subsequently converted bankruptcy case(s) of any Debtors (collectively, "Successor Cases"), at any time existing or arising, of any kind or nature whatsoever.  The Adequate Protection Superpriority Claim shall be against each Debtor on a joint and several basis.  Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Cases shall be senior to, or *pari passu* with, any of the Adequate Protection Superpriority Claims.

(c)    *Adequate Protection Payments*.  The respective Prepetition Secured Parties shall, as set forth below, receive from the Debtors the following payments (collectively, "Adequate Protection Payments"): to the extent set forth in the Budget, and to the extent not otherwise paid in accordance with the terms of the Fifth Amendment (as defined herein), the Debtors shall pay in full, in cash and in immediately available funds, as and when such payments would have come due under the Credit Agreement had the Chapter 11 Cases not been commenced, all interest, fees, and other amounts (other than principal), as applicable, accruing solely with respect to the API Americas Direct Obligation, which shall accrue and be payable at the applicable interest rate set forth in the Credit Agreement and at the times provided for in the Prepetition Loan Documents.

(d)    *Payment of Fees and Expenses*.  As further adequate protection, the Debtors shall pay in cash, without the need for the filing of formal fee applications: (i) the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Administrative Agent under the Prepetition Loan Documents arising prior to the Petition Date in connection with the Chapter 11 Cases; (ii) the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Administrative Agent under the Prepetition Loan Documents arising subsequent to the Petition Date in connection with the Chapter 11 Cases; and (iii) any other fees, costs, and expenses incurred by the Administrative Agent under the Prepetition Loan Documents in connection with the Chapter 11 Cases ("Adequate Protection Fees").  All payments of professional fees, expenses and disbursements authorized under this Paragraph 3(d) shall be

made within ten (10) days (which time period may be extended by the applicable professional) ("Review Period") after receipt by the Debtors, any Committee and the U.S. Trustee of invoices therefor ("Invoiced Fees") and without the necessity of filing formal fee applications.  The invoices for such Invoiced Fees shall include the total aggregate number of hours billed and a summary description of services provided, and the expenses incurred by the applicable professional; *provided*, *however*, that any such invoice may be redacted to protect privileged, confidential or proprietary information.  The Debtors, any Committee and the U.S. Trustee may object to any portion of the Invoiced Fees ("Disputed Invoiced Fees") within the Review Period, setting forth the specific objections to the Disputed Invoiced Fees.  The Debtors shall pay (i) any Invoiced Fees that are not Disputed Invoiced Fees immediately after expiration of the Review Period; and (ii) any Disputed Invoiced Fees within fifteen (15) days after approval by the Court by a final order requiring payment of any previously Disputed Invoiced Fees.  Notwithstanding anything herein to the contrary, the Debtors reserve the right to argue that, to the extent that any cash payment made hereunder as adequate protection to the Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such payment should be recharacterized and applied as payment of principal amounts owed under the Credit Agreement and shall be applied against the Prepetition Secured Parties' prepetition secured claims accordingly.

(e)    Without limiting any other provisions of this Second Interim Order, any and all Adequate Protection Payments that remain unpaid shall be paid in full in cash on the effective date of the Debtors' confirmed chapter 11 plan.

(f)    *Adequate Protection Reservation.*  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Second

17

Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, without prejudice to the Debtors' rights to contest the seeking of such relief by the Prepetition Secured Parties. Each of the Debtors shall be jointly and severally liable for the Adequate Protection provided for herein.

4.    *Additional Adequate Protection.* As additional adequate protection:

(a)    *Reporting*:    The Debtors shall cooperate with, and to the extent appropriate, comply with all reporting requirements of the Borrowers set forth in the Credit Agreement (including timely provision of reports as required under Section 8.3 thereof), all of which reports shall be provided to the Administrative Agent and the Lenders. In addition, the Debtors shall provide the additional reporting as the Administrative Agent shall reasonably require.

(b)    In addition to, and without limiting, whatever rights to access the Administrative Agent and the other Prepetition Secured Parties have under the Prepetition Loan Documents, respectively, the Debtors shall permit representatives, agents, and employees of the Administrative Agent and other Prepetition Secured Parties to have reasonable access to: (i) inspect the Debtors' assets and properties; (ii) examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, management, financial advisors, and consultants.

5.    *Effect of Stipulations on Third Parties.*

(a)    *Generally.*    The Debtors have admitted, stipulated, and agreed to the various stipulations and admissions contained in this Second Interim Order, solely to the extent set forth in Paragraph G above ("Stipulations"), which stipulations and admissions are and shall

be binding upon the Debtors and any successors thereto (other than with respect to a successor Trustee (as defined below) appointed before the expiration of the Initial Challenge Period (as defined below), which successor Trustee shall be bound by the Stipulations upon expiration of the Challenge Period, as provided in this paragraph) in all circumstances.  The stipulations and admissions contained in this Second Interim Order, including without limitation, the Stipulations, shall also be binding upon the Debtors' estates and all other parties in interest, including the Committee (if any) or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), for all purposes unless (a) (i) any party in interest other than the Committee, no later than the date that is seventy five (75) days from entry of the First Interim Order, and (ii) the Committee, no later than sixty (60) days from the appointment of the Committee (as applicable for clauses (i) and (ii), "Initial Challenge Period") has properly filed an adversary proceeding as required under the Bankruptcy Rules (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition Secured Obligations, the liens of the Administrative Agent on the Prepetition Collateral securing the Prepetition Secured Obligations, or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Administrative Agent and/or any other Prepetition Secured Party on behalf of the Debtors' estates ((x) and (y), collectively, referred to herein as "Challenges"), and (b) the Court rules in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided*, that, as to the Debtors, all such Challenges are hereby irrevocably waived and relinquished effective as of the Petition Date.  If during the Initial Challenge Period, the Committee or other third party files a motion for standing with a draft complaint identifying and describing all Challenges consistent with applicable law and rules of procedure, the Initial Challenge Period will be tolled solely for the Committee or

such other third party and solely with respect to the Challenges asserted in the draft complaint until five (5) business days from the entry of an order granting the motion for standing to prosecute such Challenges described in the draft complaint and permitted by the Court ("Extended Challenge Period," together with the Initial Challenge Period, "Challenge Period"). If standing is denied by the Court, the Challenge Period shall be deemed to have expired.

(b)      *Binding Effect.*  If no such Challenge or motion for standing, as applicable, is timely filed prior to the expiration of the Initial Challenge Period, without further order of the Court:  (1) the Debtors' stipulations, admissions and releases contained in this Second Interim Order (including the Stipulations contained herein and the releases set forth in Paragraph 6 below) shall be binding on all parties in interest, including the Debtors' estates, the Committee (if any), and any subsequently appointed Trustee, case fiduciary, or successors and assigns; (2) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case; (3) the Administrative Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, to be, legal, valid, binding, perfected, and with the priority specified in the Stipulations, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (4) the Prepetition Secured Parties (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by any Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Initial Challenge

Period); *provided*, that if the Chapter 11 Cases are converted to chapter 7 or a Trustee is appointed prior to the expiration of the Initial Challenge Period, any such estate representative or Trustee shall receive the full benefit of the later of (a) the expiration of the Initial Challenge Period and (b) thirty (30) days from the appointment of such estate representative or Trustee, subject to the limitations described herein.    If any Challenge or motion for standing, as applicable, is timely and properly filed prior to the expiration of the Initial Challenge Period, the releases, stipulations and admissions contained in this Second Interim Order, including without limitation, in the Stipulations, of this Second Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and any other person, including any Trustee appointed in any Chapter 11 Case(s) or Successor Cases, as applicable, except as to any such findings and admissions that were expressly challenged in the original complaint initiating the adversary proceeding and excluding any amended or additional claims that may or could have been asserted thereafter through an amended complaint under FRCP 15 or otherwise.    This stipulation shall be binding upon the Debtors, their estates, all parties in interest in the Chapter 11 Cases and their respective successors and assigns, including any Trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns.    For the avoidance of doubt, Challenges may be filed against one or more of the Prepetition Secured Parties without filing Challenges against each of the other parties and likewise the Challenge Period may expire as to some but not all of the Prepetition Secured Parties if any Challenges are filed against one or more of the Prepetition Secured Parties but not all of them.

36615203.2 02/26/2020

(c)    *No Standing*.  Nothing in this Second Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors and/or their bankruptcy estates, including, without limitation, any Challenges with respect to the Prepetition Loan Documents or the Prepetition Secured Obligations.

6.    *Debtors' Waivers and Releases*.

(a)    *Section 506(c) Claims and 552(b) Equities*.  Subject to entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against any of the Prepetition Secured Parties, their respective claims, the Prepetition Collateral or Cash Collateral, pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Administrative Agent (and no such consent shall be implied from any other action, inaction or acquiescence by the Administrative Agent or any other Prepetition Secured Parties).  Subject to entry of the Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

(b)    *Release*.  In consideration of and as a condition to the Administrative Agent's and the Lenders' consent to the use of Cash Collateral and providing other financial accommodations to the Debtors pursuant to the provisions of this Second Interim Order, each Debtor, on behalf of itself, and its respective successors and assigns and such Debtor's estate (collectively, "Releasors"), subject only to Paragraph 5 above, hereby absolutely releases and forever discharges and acquits (i) each Prepetition Secured Party, (ii) the respective successors,

participants, assigns directors, officers, attorneys, employees, financial advisors, consultants and other representatives of each Prepetition Secured Party, (iii) the present and former shareholders, affiliates, subsidiaries, divisions, and predecessors of each Prepetition Secured Party (the parties identified in clauses (i) through (iii) being hereinafter referred to collectively as "Releasees") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, cross claims, defenses, rights of set-off, demands, and liabilities whatsoever (individually, a "Prepetition Released Claim" and collectively, "Prepetition Released Claims") of every kind, name, nature and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, both at law and in equity, including, without limitation, any so-called "lender liability" claims or defenses, that any Releasor may now or hereafter own, hold, have, or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause, or thing whatsoever which arose or may have arisen at any time on or prior to the date of this Second Interim Order, to the extent relating to the Prepetition Loan Documents or transactions with Debtors contemplated under the Prepetition Loan Documents; *provided*, that such release shall be effective with respect to the Debtors upon entry of the Final Order, and shall not be effective with respect to the Debtors' estates until the expiration of the Challenge Period.

7.    *Budget; Reporting.*

(a)    No later than the Thursday of each calendar week commencing on the first Thursday following the fourth full week after the Petition Date, and every four weeks thereafter, the Debtors shall deliver to the Administrative Agent and its counsel an updated Budget.

(b)     No later than the Thursday of each calendar week commencing on the first Thursday following the first full week, the Debtors shall deliver to the Administrative Agent a variance report comparing, on a line item basis, actual results to the Budget for the previous individual week on a weekly, cumulative, and four-week trailing basis.

(c)     The Debtors shall test the Budget on the Thursday following the first four (4) full weeks on a four-week trailing basis (each such four-week period, a "Budget Period") and every other Thursday thereafter.   So long as no Termination Event has occurred and is continuing with respect to Cash Collateral, the Debtors shall be authorized to use Cash Collateral in accordance with the Budget and this Second Interim Order in an amount that would not cause either (x) actual disbursements to be more than twenty-five percent (25%) in excess of the disbursements included in the Budget for any Budget Period, or (y) actual receipts (excluding asset sale proceeds other than ordinary course sales of inventory) to be more than twenty-five percent (25%) below the receipts (excluding asset sale proceeds other than sales of inventory) included in the Budget for any Budget Period (each, a "Permitted Variance").

8.     *Carve-Out*.  The Adequate Protection Liens, Adequate Protection Superpriority Claims, and Prepetition Liens shall be subject only to the right of payment of the following expenses (collectively, "Carve-Out"), to the extent provided herein:

(a)     statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) with respect to the Debtors ("Statutory Fees"); and

(b)     upon entry of this Second Interim Order:

i.     the allowed fees and expenses actually incurred by persons or firms retained by the Debtors or any Committee on or after the Petition Date pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code (each a "Professional" and collectively,

24

"Professionals") in a cumulative, aggregate sum of (i) for the period prior to the occurrence of the delivery of a Carve-Out Trigger Notice (as defined below), an amount not to exceed the lesser of (A) the aggregate amount budgeted for such Professionals in accordance with the Budget up to the time of such Carve-Out Trigger Notice, and (B) the actual amount of such Allowed Professional Fees for each Professional incurred on or after the Petition Date up through and including the date a Carve-Out Trigger Notice is delivered ("Allowed Professional Fees"), subject in all respects to the terms of the Final Order and the Budget. The Carve-Out shall include all Allowed Professional Fees that are incurred or earned (1) at any time before delivery of a Carve-Out Trigger Notice, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice, subject and limited in all respects to the amounts set forth in the Budget for payment of such Professionals; and (2) beginning the first day after the delivery by the Administrative Agent of written notice (which for the avoidance of doubt may be by electronic mail) of the occurrence of a Termination Event ("Carve-Out Trigger Notice") to the Debtors, the Debtors' counsel, the U.S. Trustee, and counsel for any Committee, the fees and expenses incurred by the Professionals retained by the Debtors in an aggregate amount not to exceed $100,000 ("Post-EOD Carve-Out Amount") (the aggregate amount of clauses (1) and (2), collectively, "Carve-Out Cap"); *provided*, *however* the Carve-Out shall not include any bonus, transaction fees, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any of the Professionals. Notwithstanding the foregoing, the Carve-Out Trigger Notice shall be deemed to have been delivered to the required notice parties on the Termination Date. To the extent that proceeds of Collateral are used to fund the Carve-Out, Administrative Agent shall be reimbursed from any unencumbered assets.

(c)    For the avoidance of doubt, to the extent the budgeted amounts for a Professional for any Budget period exceed the actual fees and expenses incurred by such Professional for that period, the excess may be carried forward to later Budget periods or backward to prior Budget periods to be applied to any fees or expenses that exceeded the budgeted amounts for such prior or later periods.

9.    *Excluded Professional Fees.*  Notwithstanding anything to the contrary in this Second Interim Order, neither the Carve-Out, nor the proceeds of any Prepetition Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:  (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief:  (i) challenging the legality, validity, priority, perfection, or enforceability of the Prepetition Secured Obligations or the Administrative Agent's liens on and security interests in any of the Prepetition Collateral, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Prepetition Secured Obligations or the Administrative Agent's liens on and security interests in the Prepetition Collateral, or (iii) preventing, hindering or delaying the Administrative Agent's assertion or enforcement of any lien, claim, right, or security interest or realization upon any Prepetition Collateral, in accordance with the terms and conditions of this Second Interim Order, (b) a request to use the Cash Collateral on and after the Termination Date, except to the extent expressly permitted herein, (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), other than from the Prepetition Secured Parties, without the prior written consent of the Administrative Agent, *except* that the Carve-Out or the proceeds of any Prepetition Collateral

36615203.2 02/26/2020

may be used (without the consent of the Administrative Agent) to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with a request for authorization to obtain other debtor-in-possession financing or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), so long as any liens granted in connection therewith are subordinated to the Prepetition Liens, Adequate Protection Liens, and Adequate Protection Superpriority Claims and permitted by the Fifth Amendment to Credit Agreement attached to the Motion as Exhibit B ("Fifth Amendment"), (d) the commencement or prosecution of any action or proceeding of any claims, causes of action, or defenses against the Prepetition Secured Parties or any of their respective officers, directors, employees, agents, attorneys, financial advisors, consultants, affiliates, successors, or assigns, including, without limitation, any attempt to avoid any claim, lien, or interest of, or obtain any recovery from any of the Prepetition Secured Parties under Chapter 5 of the Bankruptcy Code; provided, however, that, subject to the Carve-Out Cap, an amount not to exceed $25,000 in the aggregate of Cash Collateral may be used to pay the Allowed Professional Fees of any Committee to investigate (but not prosecute) claims against and possible objections with respect to the Prepetition Secured Obligations, and the pre-petition liens and security interests of, the Prepetition Secured Parties (including, without limitation, issues regarding validity, perfection, priority, or enforceability of the secured claims of the Prepetition Secured Parties).  Nothing herein shall be construed as a consent to the allowance of the fees and expenses of any Professional or shall affect the right of the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  The Debtors shall be permitted to pay fees and expenses allowed and payable pursuant to an Order of the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, solely to the extent set forth in the Budget and not to

exceed the amounts set forth in the Budget, provided that any such payment shall be subject to entry of a final order of the Bankruptcy Court of each Professional's final application for allowance of such fees and expenses.

10.    *Reservation of Rights.*    Notwithstanding anything herein to the contrary, the Debtors reserve the right to argue that, to the extent that any cash payment made hereunder as adequate protection to the Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, such payment should be recharacterized and applied as payment of principal owed under the Credit Agreement and shall permanently reduce the Prepetition Secured Obligations accordingly, and the Prepetition Secured Parties reserve the right to object to any such argument.

11.    *Lien Perfection.*    This Second Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, the Administrative Agent (on behalf of itself and the other Prepetition Secured Parties) may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.  The Administrative Agent (on behalf of itself and the other Prepetition Secured Parties) may, in its

sole discretion, file a photocopy of this Second Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Second Interim Order.

12.    *Termination.*  Upon the occurrence and during the continuance of a Termination Event (unless such occurrence and continuance is waived by the Administrative Agent in its sole discretion), the Debtors' right to use Prepetition Collateral (other than in the ordinary course of business solely in relation to winding down the businesses of the Debtors) and Cash Collateral shall terminate automatically (the date of such termination, "Termination Date"), subject to Paragraph 13 below, without further notice or court proceeding, on the earliest to occur of any of the events set forth below (each such event, a "Termination Event"); *provided that*, with the consent of the Debtors and the Administrative Agent, in the exercise of their respective sole discretion, the Termination Date may be extended without further Court approval upon the filing of a notice on the docket of the Chapter 11 Cases setting forth the new Termination Date:

(a)    April 30, 2020;

(b)    The failure by the Debtors to make, or cause to be made, any payment under this Second Interim Order to the Administrative Agent or Prepetition Secured Parties when due;

(c)    The failure by the Debtors to deliver to the Administrative Agent any of the material documents or other material information required to be delivered pursuant to this Second Interim Order when due or any such documents or other information shall contain a material misrepresentation;

(d)    The failure of any Loan Party to subordinate its liens under any intercompany loan or advance from such Loan Party to the Debtors for the purpose of administering the Chapter 11 Cases ("Wind-Up Loan") on terms and conditions reasonably satisfactory to Administrative Agent;

(e)    The failure to obtain entry of the Final Order within thirty-five (35) days of the Petition Date;

(f)    The Debtors shall grant, create, incur or suffer to exist any postpetition liens or security interests other than:  (i) those granted pursuant to this Second Interim Order; (ii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business for amounts outstanding as of the Petition Date, even if recorded after the Petition Date; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; (v) any Permitted Liens; and (vi) those granted in connection with debtor-in-possession financing that is subordinated to the Prepetition Liens, Adequate Protection Liens, and Adequate Protection Superiority Claims and permitted by the Fifth Amendment;

(g)    An order shall be entered reversing, adversely amending, adversely supplementing, staying, vacating or otherwise adversely modifying any material provision of this Second Interim Order without the written consent of the Administrative Agent;

(h)    There shall be a breach by any Debtor of any material provisions of this Second Interim Order, or this Second Interim Order shall cease to be in full force and effect or

shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment;

(i)    The Debtors file a motion seeking approval to create, incur, or suffer to exist any claim that is senior to the Adequate Protection Superpriority Claims;

(j)    The Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Superpriority Claim;

(k)    The Court shall have entered an order dismissing any of the Chapter 11 Cases;

(l)    The entry of an order confirming a plan of reorganization or liquidation that is not acceptable to Administrative Agent;

(m)    The Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(n)    The Court shall have entered an order authorizing the appointment or election of a trustee or examiner with expanded powers or any other representative with expanded powers relating to the operation of the businesses in the Chapter 11 Cases;

(o)    The Court shall have entered an order (other than any "first day" or "second day" orders entered in connection with motions and/or orders previously provided to and not objected to by Administrative Agent) granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Administrative Agent or any of the Prepetition Secured Parties with respect to any Prepetition Collateral or Cash Collateral without the written consent of the Administrative Agent, which consent may be withheld in its sole discretion;

(p)    A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Secured Obligations or asserting any other cause of action against and/or with respect to the Prepetition Secured Obligations, the Prepetition Collateral and Cash Collateral, or the Administrative Agent, any of the other Prepetition Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(q)    [Reserved.]

(r)    The Debtors shall use Cash Collateral in any manner inconsistent with the Budget and the other terms of this Second Interim Order, including, without limitation, Paragraph 2 hereof;

(s)    [Reserved.]

(t)    Impairment or failure to preserve the Prepetition Secured Obligations, Adequate Protection Obligations, and/or their rights to credit bid the Prepetition Secured Obligations and/or Adequate Protection Obligations; and

(u)    Subject to the rights preserved under Paragraph 7, the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by any Prepetition Secured Party arising under the Credit Agreement, unless (i) the Debtors have sought a stay of such order within five (5) business days after the date of such issuance, and such order is stayed, reversed or vacated within ten (10) business days after the date of such issuance or (ii) the Administrative Agent has consented to such order in writing.

(v)    The Debtors shall have failed to meet any of the following milestones by the applicable deadline, which deadlines may be extended by mutual written agreement between the Debtors and Administrative Agent (on behalf of the Prepetition Secured Lenders):

36615203.2 02/26/2020

(i) File a motion under Bankruptcy Code section 363 for the sale of either (i) all or substantially all of Debtors' assets, or (ii) all or substantially all of Debtors' assets in respect API Americas Inc. Laminates Division in Osgood, Indiana, in the case of either clause (i) or (ii) (either, a "363 Asset Sale"), on or before March 1, 2020; and

(ii) Closing of the 363 Asset Sale on or before April 1, 2020.

13. *Remedies upon the Termination Date.* Upon the occurrence and during the continuance of a Termination Event (unless such occurrence and continuance is waived by the Administrative Agent in its sole discretion), and (i) immediately upon the occurrence of the Termination Event set forth in Paragraphs 12(a), 12(e), 12(f), 12(g), 12(i), 12(j), 12(k), 12(m), 12(n), 12(o), 12(t), and 12(u), and (ii) upon three (3) business days' written notice of such Termination Event other than those set forth in the immediately preceding clause (i) ("Default Notice Period") to the Debtors, their restructuring counsel, the U.S. Trustee, and counsel to the Committee, if any, (a) the Debtors shall immediately cease using Cash Collateral; (b) the Adequate Protection Obligations, if any, shall become due and payable; and (c) the Administrative Agent and each Prepetition Secured Party may exercise the rights and remedies available to it under the Prepetition Loan Documents, this Second Interim Order, or applicable law, as applicable, including, without limitation, foreclosing upon and selling all or a portion of the Collateral in order to collect and satisfy the Prepetition Secured Obligations and Adequate Protection Obligations, in accordance with this Second Interim Order. The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions; *provided that* during the Default Notice Period, unless the

33

Court orders otherwise, the automatic stay under section 362 of the Bankruptcy Code (to the extent applicable) shall remain in effect; *provided further*, that during the Default Notice Period the Debtors and any Committee shall be entitled to an emergency hearing before this Court, and the Default Notice Period shall be extended until the Court issues an order with respect thereto, and the Debtors or any party in interest shall be permitted to use of Cash Collateral only for critical payroll and other critical expenses necessary to keep the Debtors' businesses operating in accordance with the applicable Budget during the Default Notice Period. Any delay or failure of the Administrative Agent or Prepetition Secured Parties to exercise rights under the Prepetition Loan Documents or this Second Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable document. Subject and subordinate only to the Carve-Out and as otherwise set forth herein, the Administrative Agent shall be entitled to apply the payments or proceeds of the Collateral in accordance with the provisions of the Prepetition Loan Documents, as applicable. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Administrative Agent and the Prepetition Secured Parties under this Second Interim Order shall survive the Termination Date.

14.    [Reserved.]

15.    *Preservation of Rights Granted Under this Second Interim Order.*

(a)    Notwithstanding any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code (x) the Adequate Protection Superpriority Claims, the other administrative claims granted pursuant to this Second Interim Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this

Second Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such Adequate Protection Superpriority Claims, the other administrative claims granted pursuant to this Second Interim Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(b)    If any or all of the provisions of this Second Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Secured Parties, of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Cash Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Prepetition Secured Parties of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Second Interim Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted herein and to the protections afforded in section 363(m) of the Bankruptcy Code with respect to all uses of the Cash Collateral and all Adequate Protection Obligations.

(c)    Subject to Paragraph 5 of this Second Interim Order, the adequate protection payments made pursuant to this Second Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Chapter 11

Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(d)    Except as expressly provided in this Second Interim Order, the Adequate Protection Obligations, the Adequate Protection Superiority Claims and the Adequate Protection Liens and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Second Interim Order shall survive, and shall not be modified, impaired or discharged by the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, or by any other act or omission. The terms and provisions of this Second Interim Order shall continue in the Chapter 11 Cases, in any Successor Cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the Adequate Protection Superiority Claims, the other administrative claims granted pursuant to this Second Interim Order, and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Second Interim Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

16.    *No Marshalling.*  Subject to entry of the Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Collateral (including Cash Collateral).

17.    *Good Faith.*  Each of the Administrative Agent and the Lenders acted in good faith in connection with the First Interim Order and this Second Interim Order and their reliance on the First Interim Order and this Second Interim Order has been, and is, in good faith.

36615203 2 02/26/2020

18.    *Miscellaneous.*

(a)    *Binding Effect.*  The provisions of this Second Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors or assigns.

(b)    *Modification of Automatic Stay.*  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Second Interim Order and the transactions contemplated hereby.  The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to accomplish the transactions contemplated by this Second Interim Order.

(c)    *Headings.*  The headings in this Second Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Second Interim Order.

(d)    *Effectiveness.*  This Second Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Second Interim Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

36615203.2 02/26/2020

(e)      *No Third-Party Rights.*   Except as explicitly provided for herein, this Second Interim Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect, third-party or incidental beneficiary.

(f)      *Survival of Second Interim Order.*  The provisions of this Second Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan or plans of reorganization or liquidation in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in the Court.

(g)      *Controlling Effect of Second Interim Order.*  To the extent any provision of this Second Interim Order conflicts or is inconsistent with any provision of the Motion or the First Interim Order, the provisions of this Second Interim Order shall control to the extent of such conflict.

(h)      *Order Immediately Effective.*  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Second Interim Order are effective immediately and enforceable upon its entry.

(i)      *Debtor Authorization to Effectuate Relief.*  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Second Interim Order in accordance with the Motion.

36615203.2 02/26/2020

(j)    *Exclusive Jurisdiction.*    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Second Interim Order.

19.    *Proofs of Claim.*    Notwithstanding the entry of an order establishing a bar date in any of these Chapter 11 Cases, or the conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, the Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases with respect to any of the Prepetition Secured Obligations, Adequate Protection Obligations, Adequate Protection Liens, Adequate Protection Superpriority Claim, or any other claims or liens granted hereunder or created hereby.    The Administrative Agent, for the benefit of the other Prepetition Secured Parties, is hereby authorized and entitled, in its sole and absolute discretion, but in no event is required, to file (and amend and/or supplement, as it sees fit) proofs of claim in each of the Chapter 11 Cases on behalf of all of the Prepetition Secured Parties in respect of the Prepetition Secured Obligations.    Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties.    Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Chapter 11 Cases will so provide.

36615203 2 02/26/2020

20.    *Final Hearing.*  The Final Hearing on the Motion shall be held on March 25, 2020 at 2:00 p.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on March 12, 2020.

Dated: February **26**, 2020

_____
Honorable Christopher S. Sontchi

**EXHIBIT 1**

**INITIAL BUDGET**

# API Americas Inc.
## Cash Flow Forecast
$ in 000s

| Bankruptcy Week | Forecast Week 3 2/21/20 | Forecast Week 4 2/28/20 | Forecast Week 5 3/6/20 | Forecast Week 6 3/13/20 | Forecast Week 7 3/20/20 | Forecast Week 8 3/27/20 | Forecast Week 9 4/3/20 | Forecast Week 10 4/10/20 | Forecast Week 11 4/17/20 | Forecast Week 12 4/24/20 | Forecast Week 13 5/1/20 | Forecast Week 14 5/8/20 | Forecast Week 15 5/15/20 | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating cash flows** | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | |
| Operating receipts | $702 | $488 | $122 | $409 | $218 | $447 | $492 | $248 | $244 | $240 | $272 | $- | $- | $3,882 |
| Miscellaneous receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total receipts | 702 | 488 | 122 | 409 | 218 | 447 | 492 | 248 | 244 | 240 | 272 | - | - | 3,882 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Materials | (509) | (440) | (340) | (340) | (299) | (224) | (224) | - | - | - | - | - | - | (2,377) |
| Freight | (36) | (39) | (35) | (40) | (38) | (40) | (5) | - | - | - | - | - | - | (232) |
| Salary & Wages | - | (240) | - | (197) | - | (179) | (160) | (81) | - | (42) | (153) | (18) | - | (1,070) |
| Benefits | - | (115) | - | (13) | - | (92) | - | (6) | - | (40) | - | (1) | - | (266) |
| Rent | - | (27) | - | - | - | - | (8) | - | - | - | - | - | - | (34) |
| Utilities | (7) | (20) | (87) | - | (15) | (20) | (87) | - | - | (15) | - | (87) | - | (340) |
| Taxes | - | (1) | - | - | - | (1) | - | - | - | - | (61) | - | - | (62) |
| Shared services | - | (145) | - | - | - | (100) | - | - | - | - | (100) | - | - | (345) |
| Other disbursements | (34) | (75) | (5) | (31) | (5) | (45) | (5) | (15) | (25) | (25) | (25) | (50) | (50) | (389) |
| Total operating disbursements | (586) | (1,101) | (467) | (620) | (356) | (702) | (489) | (102) | (25) | (121) | (339) | (156) | (50) | (5,116) |
| **Net operating cash flows** | 116 | (613) | (345) | (211) | (138) | (255) | 3 | 146 | 219 | 119 | (67) | (156) | (50) | (1,234) |
| **Restructuring activity** | | | | | | | | | | | | | | |
| Professional fees | - | - | - | - | - | (719) | - | - | - | - | (660) | - | - | (1,379) |
| Adequate assurance - Utilities | (55) | - | - | - | - | - | - | - | - | - | - | - | - | (55) |
| Adequate protection - PNC | - | - | (275) | - | - | - | (275) | - | - | - | (275) | - | - | (825) |
| US Trustee fees | - | - | - | - | - | - | - | - | - | - | (58) | - | - | (58) |
| **Total restructuring costs** | (55) | - | (275) | - | - | (719) | (275) | - | - | - | (993) | - | - | (2,317) |
| **Net cash flows** | $61 | $(613) | $(620) | $(211) | $(138) | $(974) | $(272) | $146 | $219 | $119 | $(1,060) | $(156) | $(50) | $(3,551) |
| Beginning Cash Balance | $3,588 | $3,649 | $3,035 | $2,415 | $2,204 | $2,066 | $1,091 | $819 | $965 | $1,183 | $1,302 | $242 | $87 | $3,588 |
| Net Cash Flows | 61 | (613) | (620) | (211) | (138) | (974) | (272) | 146 | 219 | 119 | (1,060) | (156) | (50) | (3,551) |
| DIP Proceeds | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash Balance** | $3,649 | $3,035 | $2,415 | $2,204 | $2,066 | $1,091 | $819 | $965 | $1,183 | $1,302 | $242 | $87 | $37 | $37 |
| Total DIP Drawn | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | |
| Accrued and unpaid professional fees | 665 | 885 | 1,100 | 1,300 | 1,500 | 981 | 1,181 | 1,331 | 1,481 | 1,631 | 1,121 | 1,271 | 1,421 | |
| Less: Cash Balance | (3,649) | (3,035) | (2,415) | (2,204) | (2,066) | (1,091) | (819) | (965) | (1,183) | (1,302) | (242) | (87) | (37) | |
| **Total DIP Need** | N/A | N/A | N/A | N/A | N/A | N/A | $362 | $366 | $298 | $329 | $879 | $1,184 | $1,384 | |

Preliminary Draft - Subject to Change